Rachel E. Kaufman (CSB# 259353)
rachel@kaufmanpa.com
KAUFMAN P.A.
237 S Dixie Hwy, 4th Floor
Coral Gables, Florida 33133
Telephone: (305) 469-5881

*Attorney for Plaintiff and the Proposed Classes*

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **MELISSA SIMMONS,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>*v.*<br><br>**NURX, INC.**, a Delaware corporation, and **THIRTY MADISON, INC.**, a Delaware corporation,<br><br>*Defendants.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

**<u>CLASS ACTION COMPLAINT</u>**

Plaintiff Melissa Simmons ("Plaintiff Simmons" or "Simmons") brings this Class Action Complaint and Demand for Jury Trial against Defendants Nurx, Inc. ("Defendant Nurx" or "Nurx") and Thirty Madison, Inc. ("Defendant Thirty Madison" or "Thirty Madison") to stop the Defendants from violating the Telephone Consumer Protection Act ("TCPA") by making solicitation text messages to

consumers without consent including text messages to phone numbers that are registered on the National Do Not Call registry ("DNC") and to consumers who have expressly requested that the calls stop. Plaintiff also seeks injunctive and monetary relief for all persons injured by Defendants' conduct. Plaintiff Simmons, for this Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## PARTIES

1. Plaintiff Simmons is a resident of Watonga, Oklahoma.

2. Defendant Nurx is a Delaware corporation registered in California with its principal place of business in San Francisco, California. Defendant Nurx conducts business throughout this District and throughout the US.

3. Defendant Thirty Madison is a Delaware corporation registered in New York with its principal place of business in New York.

## JURISDICTION AND VENUE

4. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

5. This Court has personal jurisdiction over the Defendants because both Defendants transact business in this District and sends telecommunication messages from this District.

6. Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant has its headquarters in this District and the wrongful conduct giving rise to this case was directed from this District.

**INTRODUCTION**

7. As the Supreme Court explained at the end of its term this year, “Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people’s representatives in Congress have been fighting back.” *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

8. When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).

9. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. In re Rules and Regulations Implementing the TCPA of 1991, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

10. The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

11. According to online robocall tracking service "YouMail," 5.1 billion robocalls were placed in August 2023 alone, at a rate of 163.8 million per day. www.robocallindex.com (last visited September 5, 2023).

12. The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

13. "Robocalls and telemarketing calls are currently the number one source of consumer complaints at the FCC." Tom Wheeler, *Cutting off Robocalls* (July 22, 2016), statement of FCC chairman.[1]

14. "The FTC receives more complains about unwanted calls than all other complaints combined." Staff of the Federal Trade Commission's Bureau of Consumer Protection, *In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,* Notice of Proposed Rulemaking, CG Docket No. 02-278, at 2 (2016).[2]

[1] https://www.fcc.gov/news-events/blog/2016/07/22/cutting-robocalls

[2] https://www.ftc.gov/system/files/documents/advocacy_documents/comment-staff-ftc-bureau-consumer-protection-federal-communications-commission-rules-regulations/160616robocallscomment.pdf

## COMMON ALLEGATIONS

15. The Pill Club is part of the telehealth industry, where consumers could meet with a doctor over the internet and receive a prescription in which the Pill Club could ship them prescriptions for things like birth control and skin care. This can all take place through their website ThePillClub.com.

16. The Pill Club filed for Chapter 11 bankruptcy in 2023, after California accused the company of fraudulently billing California's Medicaid program for contraceptives consumers didn't order and counseling sessions it never provided.

17. The Pill Club paid an $18.3 Million settlement with California over these allegations.

18. Defendant Thirty Madison, another telehealth company, acquired the assets of The Pill Club through The Pill Club's bankruptcy which included the purchase of 100,000 patient files for $32.3 Million dollars and its other assets including its website thepillclub.com.[3]

19. Defendant Thirty Madison made the purchase so that they could service The Pill Club members in Thirty Madison's Nurx brand which offers the same services.

[3] https://www.mobihealthnews.com/news/thirty-madison-buys-pill-clubs-assets-following-bankruptcy

20. As part of the plan to transition The Pill Club customers to become Nurx paying customers, Thirty Madison directed text messages to The Pill Club customers stating that The Pill Club was winding down and to visit thepillclub.com/consultation webpage to learn more which would redirect the consumer to the homepage of ThePillClub.com.

21. On information and belief, at the time these text messages were sent Thirty Madison owned the domain ThePillClub.com to which the text messages directed the consumer to visit.

22. On that webpage of ThePillClub.com, it states that The Pill Club is transitioning to Nurx. Further down that page, there is a section called "How Nurx Works" where the page explains that through the company Nurx, the Pill Club members can schedule a doctor's appointment for a prescription, purchase the medication, and get the product delivered. Below the "How Nurx Works" section on that webpage, the site provides examples of the type of prescription services they solicit: birth control, emergency contraception, and acne.













23. On that webpage, Nurx details how much each product would cost. For example, the acne and skincare products cost the consumer as low as $20 per month.

Acne & Skincare

Get personalized, prescription medication for acne, anti-aging and rosacea. As low as $20/month out of pocket depending on your treatment, and free shipping.[4]

24. On information and belief, Nurx directed or cooperated in the direction of text messaging The Pill Club members directing them to a revised version of ThePillClub.com website to solicit those members to pay money for their services.

25. These text messages were also directed to consumers who have never been a customer of The Pill Club like the Plaintiff in this case.

26. These text messages were sent to consumers whose phone numbers are registered on the DNC to avoid unwanted text message solicitations.

27. To make matters worse, Nurx through these solicitations, lacked a sufficient opt-out system to ensure that a consumer who notifies Nurx to stop texting them, like the Plaintiff in this case, will be removed from their texting list.

[4] https://thepillclub.com/

28. In response to these text messages, Plaintiff Simmons brings forward this case seeking injunctive relief requiring the Defendant to cease from violating the TCPA, as well as an award of statutory damages to the members of the Classes and costs.

## PLAINTIFF SIMMONS'S ALLEGATIONS

29. The Plaintiff registered her cell phone number on the DNC on February 18, 2018.

30. The Plaintiff uses her cell phone number for personal use only as one would use a landline telephone number in a home.

31. The Plaintiff has never done business with The Pill Club or with Defendant Nurx.

32. The text messages that the Plaintiff received from Defendant Nurx were all received more than 31 days after Plaintiff registered her cell phone number on the DNC.

33. On July 8, 2023 at 7:24 PM, the Plaintiff received an unsolicited text message to her cell phone from Defendant Nurx, from shortcode 44872 explaining that The Pill Club was closing down and to request pharmacy records from cariend.com.

34. In response to the unsolicited text message, Plaintiff immediately texted "STOP" to shortcode 44872.




35. Despite her clear stop request, at 7:47 PM on July 8, 2023, Plaintiff Simmons received a 2nd unsolicited text message from Defendant Nurx, again from shortcode 44872.

36. This text message contains a similar message as the previous text message, explaining that The Pill Club is closing but it directs the recipient to visit thepillclub.com/consultation.

37. As was shown above, by visiting thepillclub.com/consultation, Nurx solicits the purchase of different products and services.

38. Frustrated by the 2nd unsolicited text message, Plaintiff Simmons texted "F*CK OFF" to shortcode 44872.

39. Immediately in response, Plaintiff Simmons received a 3rd unsolicited text message that is identical to the previous text message, soliciting Plaintiff to visit and purchase products/services from Nurx:




40. The unauthorized solicitation text messages that Plaintiff received from or on behalf of Defendant Nurx have harmed Plaintiff Simmons in the form of annoyance, nuisance, and invasion of privacy, occupied her phone line, and disturbed the use and enjoyment of her phone.

41. The text messages also caused undue distress as Plaintiff was unable to get the texts to stop by asking Nurx to stop texting her cell phone number.

42. Seeking redress for these injuries, Plaintiff Simmons, on behalf of himself and Classes of similarly situated individuals, brings suit under the TCPA.

## CLASS ALLEGATIONS

43. Plaintiff Simmons brings this action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) and seeks certification of the following Classes:

> **Do Not Call Registry Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Nurx texted more than one time, (2) within any 12-month period, (3) where the person's residential telephone number had been listed on the National Do Not Call Registry for at least thirty days, (4) for substantially the same reason Defendant sent text messages to the Plaintiff.
>
> **Internal Do Not Call Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant Nurx texted more than one time on their residential telephone number, (2) within any 12-month period (3) for substantially the same reason Defendant called Plaintiff, (4) including at least once after the person requested that they stop sending text messages.

44. The following individuals are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which either Defendant or their parents have a controlling interest and their current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons

who properly execute and file a timely request for exclusion from the Classes; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff Simmons anticipates the need to amend the Class definition following appropriate discovery.

45. **Numerosity and Typicality**: On information and belief, there are hundreds, if not thousands of members of the Classes such that joinder of all members is impracticable, and Plaintiff is a member of the Classes.

46. **Commonality and Predominance**: There are many questions of law and fact common to the claims of the Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a) Whether Defendant's conduct violated the TCPA;

(b) Whether Defendant placed multiple text messages within a 12-month period to Plaintiff and other consumers whose telephone numbers were registered with the DNC for at least 30 days of the time of each text message;

(c) whether Defendant engaged in telemarketing without implementing adequate internal policies and procedures for maintaining an internal do not call list;

(d) whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

47. **Adequate Representation**: Plaintiff Simmons will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff Simmons has no interests antagonistic to those of the Classes, and the Defendant has no defenses unique to Plaintiff. Plaintiff Simmons and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff Simmons nor her counsel have any interest adverse to the Classes.

48. **Appropriateness**: This class action is also appropriate for certification because the Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the

Classes as wholes, not on facts or law applicable only to Plaintiff Simmons. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

**FIRST CLAIM FOR RELIEF**
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Simmons and the Do Not Call Registry Class)**

49. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

50. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

51. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a

violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

52. Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as Plaintiff Simmons and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

53. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff Simmons and the Do Not Call Registry Class received more than one text message in a 12-month period made by or on behalf of the Defendant in violation of 47 C.F.R. § 64.1200, as described above.

54. As a result of Defendant's conduct as alleged herein, Plaintiff Simmons and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

55. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

## SECOND CLAIM FOR RELIEF

**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Simmons and the Internal Do Not Call Class)**

56. Plaintiff repeats and realleges the prior paragraphs of this Complaint and incorporates them by reference herein.

57. Under 47 C.F.R. § 64.1200(d), "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

> (1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the

> telemarketing call is made, the person or entity on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.
>
> (4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.
>
> (5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.
>
> (6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

58. Defendant sent text messages to Plaintiff and members of the Internal Do Not Call Class without implementing internal procedures for maintaining a list of persons who request not to be called/texted by the entity and/or by implementing procedures that do not meet the minimum requirements to allow Defendant to initiate telemarketing text messages.

59. The TCPA provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c)(5).

60. Defendant has, therefore, violated 47 U.S.C. § 227(c)(5). As a result of Defendant's conduct, Plaintiff and the other members of the Internal Do Not Call Class are each entitled to up to $1,500 per violation.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b) An award of money damages and costs;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Class; and

e) Such further and other relief as the Court deems just and proper.

**JURY DEMAND**

Plaintiff Simmons requests a jury trial.

**MELISSA SIMMONS**, individually and on behalf of all others similarly situated,

DATED this 4th day of January, 2024.

By: /s/ *Rachel E. Kaufman*
Rachel Elizabeth Kaufman
Kaufman P.A.
237 South Dixie Hwy, 4th Floor
Coral Gables, FL 33133
(305) 469-5881
Email: Rachel@kaufmanpa.com

*Attorney for Plaintiff and the putative Classes*